# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | | |
|---|---|---|
| **LYNDA E. HAWTHORNE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01288-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Lisa R. Porter, KP Law LLC, 16200 SW Pacific Highway, Suite H-233, Portland, OR 97224.
Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue,
Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and
Roberta G. Bowie, Special Assistant United States Attorney, Office of the General Counsel,
Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202.
Attorneys for Defendant.

**SIMON, District Judge.**

Ms. Lynda E. Hawthorne seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income. Because the Commissioner's decision was based on the correct legal principles and is supported by substantial evidence, the decision is affirmed.

## I.    BACKGROUND

### A.    The Application

Ms. Hawthorne protectively filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 4, 2009, alleging disability beginning on December 1, 2001. Tr. 137–39, 140–41. She alleges disability due to bipolar disorder, Post-Traumatic Stress Syndrome ("PTSD"), anxiety, hepatitis C, tendonitis, back injury, and depression. Tr. 154. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 77–80, 81–84, 95–97, 99–100. At an administrative hearing, held November 8, 2008, Ms. Hawthorne amended her alleged onset date to November 8, 2008, effectively waiving her claim for DIB. Tr. 12, 29, 32–34. After the hearing, the ALJ found Ms. Hawthorne to be not disabled. Tr. 9–28, 29–66.  The Appeals Council denied Ms. Hawthorne's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4. Ms. Hawthorne now seeks judicial review of that decision.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

OPINION AND ORDER, Page 2

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?"  20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit.  20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. § 416.920(e). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§ 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.     The ALJ's Decision**

The ALJ applied the sequential process in his November 18, 2010 decision. Tr. 12–23. At step one, the ALJ found that Ms. Hawthorne had met the insured status requirement through June 30, 2002, and had not engaged in substantial gainful activity since November 8, 2008, the alleged onset date. Tr. 14. At step two, the ALJ found that Ms. Hawthorne's polysubstance dependence in claimed early remission, bipolar disorder, panic disorder without agoraphobia,

OPINION AND ORDER, Page 4

borderline personality disorder, DeQuevain's tenosynovitis, low back pain, and history of hepatitis C were severe impairments. *Id.* At step three, the ALJ found that Ms. Hawthorne did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 15.

The ALJ then determined that Ms. Hawthorne has the RFC to perform less than a full range of light work with the following restrictions: only occasional climbing, kneeling, and crouching; frequent, but not constant, grasping, gripping, and twisting; and simple, routine work. Tr. 15–16. Further, Ms. Hawthorne was restricted to brief social interaction with coworkers, but she would work best alone and not as part of a team. Tr. 16. In reaching this conclusion, the ALJ considered Ms. Hawthorne's testimony, but found that it was not fully credible. Tr. 16–17. In addition, the ALJ examined the lay testimony of Mr. Calvin Reser, Mr. Stephan Yates, and Ms. Gladys Hawthorne and found that they were generally credible, but that their testimony did not describe limitations that would preclude Ms. Hawthorne from working. Tr. 21. The ALJ gave significant weight to the opinions of Dr. Wicher, an examining physician, and the state consultative physicians, but gave little weight to the opinion of Diane Stryker, QMHNP. Tr. 19-21.

At step four, the ALJ found that Ms. Hawthorne was unable to perform her past relevant work. Tr. 21–22. Therefore, the ALJ called a vocational expert ("VE") to testify at the hearing. Tr. 60–66. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated in Ms. Hawthorne's RFC; the VE responded that a person with those restrictions would be able to perform the work of a garment sorter, linen folder, and merchandise marketer. Tr. 22–23.

Based on the VE's testimony, the ALJ found that Ms. Hawthorne was capable of performing "jobs that exist in significant numbers in the national economy." Tr. 23. The ALJ therefore concluded that Ms. Hawthorne was not disabled. *Id*.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226–26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

OPINION AND ORDER, Page 6

### III.    DISCUSSION

Ms. Hawthorne argues that the ALJ erred by: (1) finding her testimony not credible; (2) improperly rejecting the opinion of Ms. Stryker, QMHNP; (3) failing to incorporate all of Ms. Hawthorne's limitations in the formulated RFC; and (4) by presenting the VE with a legally deficient hypothetical.

### A.    Ms. Hawthorne's Credibility

Ms. Hawthorne argues that the ALJ did not provide clear and convincing reasons for finding her testimony not credible; thus, she argues, the ALJ improperly discounted her subjective symptom testimony. Pl.'s Br. at 18–23. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Ms. Hawthorne testified that her inability to work results from a combination of mental and physical impairments. Tr. 35–60, 154. She explained that she has a deficiency in concentration and memory, both of which impair her ability to retain workplace training. Tr. 35-37. In addition, she described alternating periods of depressive and manic moods, which manifest in extreme fatigue, also secondary to her hepatitis C, or an inability to sleep, respectively. Tr. 37, 39, 49–50. She also testified that auditory hallucinations, anxiety, and anger problems would cause her significant difficulty in interacting with coworkers and supervisors. Tr. 41–43. Physically, she testified that lower back pain limits her range of motion, her ability to hold a seated or standing position, and the amount of weight she can lift. Tr. 50–53. She additionally testified to headaches that inhibit her ability to work during their duration. Tr. 53-54.

The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 16. In applying the second step, however, the ALJ found that "the claimant's statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* In support of his finding, the ALJ offered several specific reasons: (1) Ms. Hawthorne's inconsistent statements; (2) her prior work history; (3) evidence of conservative and routine medical treatment; (4) her inconsistent activities of daily living; and (5) the disparity between her testimony and the objective medical evidence. Tr. 17–19.

### 1.    Inconsistent Statements

The ALJ found Ms. Hawthorne to be not credible because of discrepancies in her testimony and her inconsistent reporting of prior drug use to physicians. Tr. 17–19. In assessing a

claimant's credibility, the ALJ may consider "inconsistencies either in [the claimant's] testimony or between his [or her] testimony and his [or her] conduct." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In particular, inconsistencies in a claimant's testimony regarding drug use are a permissible basis upon which an ALJ may make an adverse credibility finding. *See Thomas v. Barnhar*t, 278 F.3d 947, 959 (9th Cir. 2002); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony regarding alcohol use makes the claimant appear less than candid).

Ms. Hawthorne was referred to Dr. Donna Wicher for a psychodiagnostic evaluation, which took place on April 16, 2009. Tr. 412–16. During the examination, Ms. Hawthorne reported that she started abusing methamphetamine at the age of twenty, using it intermittently through 2003. Tr. 414. Ms. Hawthorne also reported that she began abusing alcohol at the age of thirteen, but that she stopped consuming alcohol around April 2008. *Id.* Dr. Wicher and the ALJ, however, recognized that the evidence in the record demonstrated that Ms. Hawthorne used methamphetamine through June 19, 2008, and consumed alcohol through November 2008. Tr. 17, 414.

The ALJ properly considered Ms. Hawthorne's inconsistent statements about her drug and alcohol use to Dr. Wicher as demonstrating a "lack of candor." *See Thomas*, 278 F.3d at 959. Moreover, Ms. Hawthorne's lack of candor, read in conjunction with Dr. Wicher's diagnoses, demonstrates why the ALJ's reliance on these material inconsistencies is significant. Dr. Wicher found that Ms. Hawthorne's deficits in mental functioning can be partially attributed to her polysubstance abuse. *See* Tr. 415 ("[A] long history of polysubstance abuse . . . could also potentially contribute to some of her instability in mood and functioning."); Tr. 416 ("[H]er

prospects for sustaining employment will *improve considerably* if she can remain abstinent from drug and alcohol use.") (emphasis added). Thus, an underreporting of past substance abuse could obfuscate an otherwise accurate diagnosis.

Further, the ALJ noted discrepancies between Ms. Hawthorne's function report, submitted to the Social Security Administration, and her reporting to Dr. Wicher. Tr. 18–19. On April 9, 2009, Ms. Hawthorne reported in her function report that she had engaged in limited, sedentary activities and that she lived with her boyfriend. Tr. 167–70 (reports using the computer, watching television, reading newspapers, and cooking once a day). A week later, during Ms. Hawthorne's examination with Dr. Wicher, she related more strenuous activities of daily living and that she lived in a twelve bedroom house. Tr. 415 (reports preparing several meals per day, going for walks, hobbies, seeing her boyfriend twice a week, and fishing). Further, there is no allegation of a corresponding increase in Ms. Hawthorne's alleged symptoms that would account for a change in the level of her activity during that week. Tr. 19. Thus, the ALJ did not err in considering these inconsistent statements.

The ALJ, however, did err in concluding that Ms. Hawthorne inconsistently reported auditory hallucinations. Tr. 17. On January 6, 2010, Ms. Hawthorne reported that she had not had an auditory hallucination in the previous eight to twelve months, which is not inconsistent with her report to Dr. Wicher of intermittent auditory hallucinations. Tr. 412, 464. This single error, however, does not detract from the ALJ's other citations to Ms. Hawthorne's inconsistent statements, which constitute substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) ("[T]he ALJ's error . . . does not 'negate the validity' of the

ALJ's adverse credibility finding.") (quoting *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

### 2.    Prior Work History

The ALJ found Ms. Hawthorne to be not credible because she had minimal earnings before her alleged onset date. Tr. 19. Ms. Hawthorne's poor work history was attributed to her criminal behavior. *Id.* A claimant's limited work history may contribute to an ALJ's adverse credibility determination when it is not the sole reason supporting that finding. *See, e.g.*, *Thomas*, 278 F.3d at 959 (substantial evidence included a limited work history, contradictory activities of daily living, and contradictory statements); *Crosby v. Comm'r Soc. Sec. Admin.*, 11-16193, 2012 WL 2917029, at *1 (9th Cir. July 18, 2012) (substantial evidence included evidence of conservative treatment, a minimal work history, and an unexplained failure to follow medical advice).

From 2002 through 2009 there was only one year where Ms. Hawthorne's earnings exceeded $6,000, and in three of those years, Ms. Hawthorne reported no earnings. Tr. 148. Ms. Hawthorne admitted that her limited work history was a result of her criminal record. Tr. 58. Although Ms. Hawthorne's limited work history does not constitute substantial evidence alone, the ALJ did not err by considering it in making a credibility finding. *See* SSR 96-7p, *available at* 1996 WL 374186 (An ALJ may consider a claimant's "prior work record and efforts to work.").

### 3.    Conservative or Intermittent Medical Treatment

The ALJ noted that Ms. Hawthorne had received conservative treatment for her impairments, which is inconsistent with the severity of her alleged symptoms. Tr. 18. Conservative treatment is a factor in discounting testimony regarding the severity of symptoms.

*Parra v. Astrue*, 481 F.3d 742, 750–751 (9th Cir. 2007); *Phillips v. Astrue*, CV-10-06367-AC, 2012 WL 1232005, at *4 (D. Or. Feb. 2, 2012), *adopted by* 2012 WL 1232419 (D. Or. Apr. 11, 2012) (conservative treatment was "a wrist splint for work and rest and Tylenol"). *Cf. Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received") (quotation omitted). Further, a claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In February 2003, Ms. Hawthorne was diagnosed with early-stage hepatitis C after an abnormal liver biopsy. Tr. 294–95. The condition, however, is not mentioned again in the medical evidence except where she is relating her diagnosis of the disease. *See, e.g.*, Tr. 415, 422; *see also* Tr. 404 ("She has Hepatitis C, but compliance is poor."). Therefore, it was reasonable for the ALJ to conclude that any limitations stemming from her hepatitis C were not as severe as alleged. *See Greger*, 464 F.3d at 972.

With regard to Ms. Hawthorne's other impairments, the ALJ reached a similar conclusion, citing Ms. Hawthorne's participation in group therapy and extensive list of medications. Tr. 18. Notably, the ALJ did not indicate what less conservative alternative to Ms. Hawthorne's therapy session and list of prescription medications existed. Indeed, the ALJ acknowledged that Ms. Hawthorne's "treatment providers are still readjusting her medications," which indicates a continued involvement in treating her various conditions. *Id.* Thus, except with

regard to hepatitis C, the ALJ's finding that Ms. Hawthorne received conservative or routine treatment was not based on substantial evidence.

### 4.    Activities of Daily Living

The ALJ found that the daily activities described by Ms. Hawthorne are "inconsistent with her allegations of disability." Tr. 18. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

Ms. Hawthorne testified that she rented a room in a twelve bedroom house in exchange for performing housekeeping chores. Tr. 415, 480. Her housemates helped her to remember things and offered "support, guidance, and unity." Tr. 44. She goes grocery shopping twice per week and cooks for herself twice per day. Tr. 415. She is able to independently complete errands and go to appointments, she cares for pets, she takes walks, and she does bead work and makes latch hook rugs. Tr. 415, 484. Socially, she attends Alcoholics Anonymous and Narcotics Anonymous meetings, and she talks on the phone with and obtains transportation from her friends. Tr. 45–46, 415.

As Ms. Hawthorne admits, "[a]rguably, caring for a pet, watching movies, and making crafts require[s] . . . a degree of attention and focus that is greater than . . . alleged." Pl.'s Br.

at 22. She goes on to argue that the supportive nature of the clean and sober house mitigates the validity of the ALJ's reliance on those other activities. *See id.* Ms. Hawthorne, however, testified that the other residents in her home helped remind her to do laundry and wash dishes—things she was required to do in exchange for living rent-free—and to take her medications. Tr. 44–45. Her testimony about the supportive nature of the house does not explain how someone with her alleged deficits in concentration and memory is able to care for pets, regularly watch movies, and complete crafts. *See, e.g.*, Tr. 484 (Ms. Hawthorne spends a "good deal of time" caring for her pets and is "making an outside cage area for them.").  Further, where there is more than one reasonable interpretation of the evidence, the Court must defer to the interpretation offered by the ALJ. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). Because Ms. Hawthorne's activities of daily living are inconsistent with her allegations of disability, the ALJ did not err in relying on them to find Ms. Hawthorne not credible. *See Orn*, 495 F.3d at 639.

### 5.     Objective Medical Evidence

The ALJ found that there was a lack of objective medical evidence substantiating Ms. Hawthorne's complaints of pain and her allegations of mental disorders. Tr. 17–18. A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins*, 261 F.3d at 857 ("[T]he medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms].") (citation omitted); *Reddick*, 157 F.3d at 722. Here, however, the ALJ has already offered legally sufficient reasons for discounting Ms. Hawthorne's testimony.

The objective medical evidence, chiefly the psychodiagnostic evaluation conducted by Dr. Wicher, reflects the ALJ's determination that Ms. Hawthorne was not as disabled by her mental impairments as she alleged. *See generally* Tr. 412–16. Although Ms. Hawthorne alleges problems with memory and concentration, Dr. Wicher had difficulty quantifying those deficits, citing "questions about whether [Ms. Hawthorne] was putting forth full effort on testing." Tr. 414 ("There was some question as to whether she has problems with memory and concentration."); *see also* Tr. 390 (One of Ms. Hawthorne's counselors reported, "Client appeared detached and is known for not being truthful.").

Dr. Wicher opined that despite Ms. Hawthorne's identifiable mental impairments, her "prospects for sustaining employment will improve considerably if she can remain abstinent from drug and alcohol use." Tr. 416. Dr. Wicher's objective findings were corroborated by a mental status examination conducted by Ms. Marguerite Gareau, PMHNP. *See* Tr. 467 (Ms. Hawthorne "is cooperative and engaged . . . . She has some difficulty with remote memory, but none with recent memory."). Because the ALJ was entitled to consider conflicts with the objective medical evidence, his reference to Dr. Wicher's mental status examination was not error. *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

In sum, the ALJ offered clear and convincing reasons supported by substantial evidence for finding Ms. Hawthorne not credible; therefore, the ALJ's error in referencing Ms. Hawthorne's conservative or intermittent medical treatment was harmless. *See Carmickle*, 533 F.3d at 1163 (affirming the ALJ's overall credibility finding despite errors); *Batson*, 359 F.3d at 1197 (same). The ALJ's credibility finding is affirmed.

**B.     Ms. Stryker's Opinion Testimony**

Ms. Hawthorne argues that the ALJ failed to provide "legitimate" reasons for rejecting

the opinion of Ms. Stryker, a mental health nurse practitioner. Pl.'s Br. 23–27. An ALJ must

determine the weight to give each source of evidence. 20 C.F.R. § 416.927(d), (f). Opinions from

"acceptable medical sources" may generally be accorded more weight than those from "other

sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 416.913. An ALJ may

wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case

law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R.

§ 416.927 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33

(9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19

(standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has

examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ

"gives specific, legitimate reasons for doing so, and those reasons are supported by substantial

record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The parties dispute the level of deference that should be given to Ms. Stryker's opinion.

Under the regulations, Ms. Stryker, a nurse practitioner, is considered an "other source." *See* 20

C.F.R § 416.913(d)(1); *see also Gomez*, 74 F.3d at 970 ("Acceptable medical sources

specifically include licensed physicians and licensed psychologists, but not nurse

practitioners.").[1] The ALJ may reject the opinion of an "other source" by offering specific,

germane reasons for doing so. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012);

---

[1] Even if the ALJ erred by considering Ms. Stryker a medically acceptable source, "the error was harmless because the ALJ gave specific, legitimate reasons based on substantial evidence in the record for discounting [her] testimony." *See Molina*, 674 F.3d at 1112 n.4 (finding that the ALJ's reasons were both "germane" and "specific and legitimate").

*Lewis*, 236 F.3d at 511. Moreover, there is insufficient evidence in the record to conclude that Ms. Stryker was acting a member of a treatment team that included acceptable medical sources. In a form signed solely by Ms. Stryker, she checked a box indicating that Ms. Hawthorne "received Mental Health counseling services from a treatment team" that is supervised by a "Doctoral level person." Tr. 629. No other information is given, nor is it found in the record, to detail the extent of the physician's supervision. *Id.* This lack of information distinguishes *Gomez*, which found a sufficient relationship when a nurse practitioner "worked closely under the supervision of [a physician] and was acting as [his] agent." *Gomez*, 74 F.3d at 971.[2]

Ms. Hawthorne attended sessions with Ms. Stryker from November 11, 2009, through at least April 2010. Tr. 479, 502. On October 10, 2010, at the request of Ms. Hawthorne's attorney, Ms. Stryker filled out a disability opinion form, which indicated diagnoses of bipolar disorder, PTSD, and polysubstance dependence, in early remission. Tr. 622–29. Ms. Stryker opined that Ms. Hawthorne had a "poor" ability to engage in full time work and that she would be expected to be absent more than four times per month. Tr. 626. More specifically, it was Ms. Stryker's opinion that Ms. Hawthorne suffered marked limitation in her activities of daily living, moderate limitation in her social functioning, and frequent deficiencies in concentration, persistence, and pace, and that she had repeated episodes of decompensation. Tr. 628. The ALJ gave Ms. Stryker's opinion little weight because it was not supported by the objective medical evidence, it was inconsistent with the other medical opinions, and the opinion form used terms inconsistent with the Social Security Administration's regulations. Tr. 20–21.

---

[2] In *Gomez*, the court relied on regulatory language that has since been repealed; however, because there is little evidence that Ms. Stryker was part of a treatment team, the Court need not address the question of *Gomez's* "continued vitality." *See Molina*, 674 F.3d at 1111 n.3 (9th Cir. 2012).

As the ALJ noted, Ms. Stryker's opinion is inconsistent with the objective medical evidence, including Ms. Stryker's own treatment notes. Tr. 21. An ALJ may reject a medical opinion if it is "brief, conclusory, and inadequately supported by clinical findings," or if it is contradicted by the offering source's treatment notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989)). Ms. Stryker's opinion describes Ms. Hawthorne as facing severe functional limitations as a result of her mental impairments. *See* Tr. 622–29. These limitations, however, are unsubstantiated by Ms. Stryker's extensive treatment notes, which span November 2009 through April 2010. *See* Tr. 479–502.

The bulk of Ms. Stryker's work appears to be coordinating and encouraging Ms. Hawthorne's use of various services, including residential placement, health care, and vocational searches. *See, e.g.*, Tr. 495, 498–99. When mental health concerns were discussed, Ms. Hawthorne never related symptoms that would substantiate the severe functional limits described in Ms. Stryker's opinion. *See, e.g.*, Tr. 488 (Ms. Hawthorne "expresses having lots of fears and paranoia, but despite this [she] is able to get out and do things."); Tr. 498 (Ms. Hawthorne "is doing well."); Tr. 500 (Ms. Hawthorne reports "her medication is working okay and she has no complaints."). Even where Ms. Hawthorne appeared to be in some distress, Ms. Stryker was equivocal in making a formal diagnosis and instead worked with Ms. Hawthorne to find a situational cause of the distress. Tr. 492; *see also* Tr. 490 ("Some social anxiety continues, but despite this [she] is able to get out regularly."). In sum, the ALJ's conclusion that Ms. Stryker's opinion was inconsistent with the objective medical evidence is supported by substantial evidence. *See Molina*, 674 F.3d at 1112.

OPINION AND ORDER, Page 19

Further, as the ALJ noted, Ms. Stryker's opinion is contradicted by the opinions of the state consultative psychologists, Drs. Sandra Lundblad and Paul Rethinger, and by Dr. Wicher, an examining psychologist. Tr. 412–16, 423–35, 449.[3] Dr. Wicher, Dr. Lundblad, and Dr. Rethinger all opined that Ms. Hawthorne suffered moderate limitations in social functioning and maintaining concentration, persistence, and pace, but only mild limitations in activities of daily living with no episodes of decompensation. Tr. 416, 433, 449. Ms. Stryker agreed that Ms. Hawthorne had moderate limitations in social functioning, but found marked limitations in Ms. Hawthorne's activities of daily living, frequent deficiencies in concentration, persistence, and pace, and three or more episodes of decompensation. Tr. 628. Although Ms. Stryker specializes in mental health, her opinion is contradicted by three other mental health specialists with doctoral-level degrees, which supports the ALJ's decision to favor their opinions over Ms. Stryker's opinion. *Cf. Molina*, 674 F.3d at 1112 (holding that a conflicting opinion from a specialist is a germane reason to discount the opinion of an "other" source) (citations omitted).

Accordingly, the ALJ did not err in discounting Ms. Stryker's opinion because the ALJ offered germane reasons for doing so that were supported by substantial evidence in the record.

## C.    Ms. Hawthorne's RFC

Ms. Hawthorne argues that the ALJ's RFC finding was erroneous and not based on substantial evidence. Pl.'s Br. at 27–28. The RFC is defined as the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe;

---

[3] As noted previously, Ms. Hawthorne does not allege and there is nothing in the record indicating that her symptoms have been getting progressively worse since her alleged onset date, November 8, 2008. Tr. 12.

the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment.  SSR 96-8p; 20 C.F.R. § 416.945(a); *see also Robbins*, 466 F.3d at 883. Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Ms. Hawthorne argues that the ALJ failed to comply with SSR 96-8p, which defines the RFC as a claimant's "ability to do sustained work-related physical and mental activities . . . on a regular and continuing basis." *See* SSR 96-8p, *available at* 1996 WL 374184 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Although, as Ms. Hawthorne argues, the ALJ did not make an express finding of Ms. Hawthorne's ability to work on a regular and continuing basis, the ALJ did note that he considered SSR 96-8p. Tr. 15. Moreover, the ALJ was not required to make an explicit finding because SSR 96-8p "essentially announces an understanding of the term 'regular and continuing basis' consistent with the ALJ's findings." *See Montalvo v. Astrue*, 237 Fed. App'x 259, 262 (9th Cir. 2007).

Ms. Hawthorne also argues that the ALJ's finding that she is able to perform "simple, routine work" is inconsistent with her restrictions in concentration, persistence, and pace. Pl.'s Br. at 27–28. Although the ALJ properly discounted the opinion of Ms. Stryker, the ALJ gave weight to the opinion of Dr. Wicher, who opined that Ms. Hawthorne had a "moderate" limitation in concentration, persistence, and pace. Tr. 19, 416. Dr. Wicher, however, further delineated her opinion, finding that Ms. Hawthorn showed a "mild" impairment in concentration, and "adequate" persistence, and that she completed worked at a "typical" pace. Tr. 416. Moreover, the consultative psychologists found that Ms. Hawthorne exhibited no significant

limitations in concentration, persistence, and pace, except for a moderate limitation in

Ms. Hawthorne's "ability to carry out detailed instructions." Tr. 445, 449.

"The term 'moderate' does not indicate a degree of limitation that must be expressly

reflected in the RFC assessment." *Bagby v. Astrue*, 10-cv-1581-PK, 2012 WL 1114298, at *10

(D. Or. Feb. 7, 2012) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007)), *adopted by*

2012 WL 1114288. Instead, the ALJ must consider the genesis of the opinion that a claimant is

so limited and incorporate those underlying functional limitations into the RFC. *See Stubbs-*

*Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated [the claimant's]

condition, including pace and mental limitations, into the only concrete restrictions available to

him."). Here, Dr. Wicher found that Ms. Hawthorne "willingly attempted and pursued all tasks

presented" and that "pace was not formally assessed, but she was able to complete a background

questionnaire . . . in a typical amount of time." Tr. 416; *see also* Tr. 415 (Ms. Hawthorne "does

bead work or makes latch hook rugs."). Significantly, aside from the evidence that has been

properly discounted, there is no other indication of how Ms. Hawthorne's limitations in

concentration, persistence, and pace are not accounted for by a restriction to "simple, routine

work." *See, e.g.*, *Sabin v. Astrue*, 337 Fed. App'x 617, 620–21 (9th Cir. 2009) (ALJ did not err in

determining that, despite moderate difficulties in concentration, persistence, or pace, the claimant

could perform "simple and repetitive tasks on a consistent basis"); *Bickford v. Astrue*, 2010

WL 4220531, at *11 (D. Or. Oct. 19, 2010) ("[S]o long as the ALJ's decision is supported by

medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in

concentration, persistence or pace."). Thus, the ALJ did not err in incorporating Ms. Hawthorne's

deficits in concentration, persistence, and pace into the RFC.

OPINION AND ORDER, Page 22

In sum, the ALJ's RFC is based on substantial evidence and is free of legal errors; it is therefore affirmed.

**D.     VE Testimony**

Ms. Hawthorne argues that the ALJ erred by presenting a hypothetical to the VE that did not include all of her functional limitations. Pl.'s Br. at 28–29. As this Court has affirmed the ALJ's findings, "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. Thus, "[t]he ALJ's reliance on testimony the VE gave in response to the hypothetical . . . was proper." *Id.* at 1217–18 (citing *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989)).

## IV.     CONCLUSION

For the reasons stated above, the Commissioner's decision that Ms. Hawthorne is not disabled is based on substantial evidence in the record and correct legal principles; therefore, the Commissioner's decision is AFFIRMED.

DATED this 3rd day of January, 2013.

<u>/s/ Michael H. Simon</u>
Michael H. Simon
United States District Judge